TODD, Circuit Justice. Let a new trial be granted in order to avoid delay. There are several points which may be considered open to further discussion upon the trial if the parties choose.

M'NAIRY, District Judge. It was clear to him from the wording of the Act of 1715 that irregular and defective conveyances were sufficient, with seven years' possession, which existed in this case, and he felt well satisfied that the statute applied. The construction of the act of 1715 by the defendants' counsel he believed to be correct.

TODD, Circuit Justice. As to the construction of the act of 1797 he had great doubts at first, which were not entirely removed. The opinion of those who knew the cause of making the statute, and the doubts intended to be removed, certainly deserve consideration in doubtful cases. The case, however, will stand open for a new trial.

At a subsequent term there was a verdict for the defendants.

## Case No. 12,406.

### SAWYER et al. v. STEELE.

[3 Wash. C. C. 464.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1819.

NON-INTERCOURSE—DISTRIBUTION OF PROCEEDS OF FORFEITURE—CLAIM—NOTICE.

1. Action of indebitatus assumpsit, by the officers of the revenue cutter, of the district of Delaware, for one half of the forfeiture incurred, for a violation of the non-intercourse law, by a vessel seized by the collector of Delaware, on the information of the plaintiffs, and by him sent to this district for trial; where she was condemned, and the amount of the forfeiture was received by the defendant, the collector of the port of Philadelphia. The rules prescribed by the laws of the United States, for the distribution of the proceeds of the forfeiture.

[Cited in Fifty Thousand Cigars, Case No. 4,782; The City of Mexico, 32 Fed. 109.]

[Cited in brief in Barry v. Goodrich, 98 Mass. 337; Rice v. Thayer, 105 Mass. 261.]

2. The commissions of the plaintiffs are not required to be given in evidence. It is sufficient for them to prove, that they acted on board as officers.

[Cited in Com. v. Kane, 108 Mass. 425; Com. v. Tobin, Id. 426.]

3. The information to induce a seizure need not be as full as the evidence in the case would authorize. It is sufficient if it induced the prosecution.

[Cited in U. S. v. One Hundred Barrels of Distilled Spirits, Case No. 15,946; U. S. v. George, Id. 15,198; Re Webster, Id. 17,332; The City of Mexico, 32 Fed. 106; U. S. v. Simons, 7 Fed. 712.]

4. It is not necessary that the officers of the revenue cutter should, when they give the information, make a claim for a part of the forfeiture; or that they should take any part in the prosecution of the case, to entitle them to a portion of the proceeds.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

5. The consent of the plaintiffs, that the vessel should be sent from the district of Delaware to the district of Pennsylvania; or a disavowal, by them, of having instituted this suit, does not constitute a waiver of their right to their share of the forfeiture.

6. The defendant is not liable to the plaintiffs, for such part of the proceeds of the forfeiture as he had paid over to other officers of the custom-house, for their shares, before notice of the claims of the plaintiffs.

[Cited in Boston & M. R. R. v. Portland, S. & P. R. R., 119 Mass. 500.]

This was an action of indebitatus assumpsit, for money had and received by the defendant, to the use of the plaintiffs. The case, with the material parts of the evidence, are stated in the charge.

Joseph R. Ingersoll, for plaintiffs.
Charles J. Ingersoll, for defendant.

WASHINGTON, Circuit Justice (charging jury). This is an action of indebitatus assumpsit, for money had and received, brought by the officers of the revenue cutter General Green, belonging to the Delaware district, against the collector of this district, to recover their proportion of the forfeiture incurred by the Perseverance, for a breach of the non-intercourse law, in 1812. The information against this vessel and her cargo, was filed in the district court of Pennsylvania, and a condemnation was decreed, which was affirmed in this court; and the proceeds having been paid over to the defendant by the marshal, the plaintiffs claim one half of the amount, alleging, that the forfeiture incurred was recovered, in consequence of information given by them, as officers of the above-mentioned revenue cutter. The question is, are the plaintiffs entitled to recover any thing? and if any thing, how much?

The 18th section of the act of congress, of the 1st March 1809 [2 Stat. 528], c. 91, entitled "An act to interdict the commercial intercourse between the United States and Great Britain and France, and their dependencies, and for other purposes" (volume 4, p. 217), declares "that all penalties and forfeitures, arising under or incurred, by virtue of this act, may be sued for, prosecuted, and recovered, with costs of suit, by action of debt in the name of the United States of America, or by indictment or information in any court having competent jurisdiction to try the same; and shall be distributed, and accounted for, in the manner prescribed by the act entitled, 'An act to regulate the collection of duties on imports and tonnage,' passed the second day of March, one thousand seven hundred and ninety-nine; and such penalties and forfeitures may be examined, mitigated, or remitted, in like manner, and under the like conditions, regulations, and restrictions, as are prescribed, authorized, and directed, by an act entitled 'An act to provide for mitigating or remitting the forfeitures, penalties, and disabilities, accruing in certain cases therein mentioned,' passed the third day of

March, one thousand seven hundred and ninety-seven, and made perpetual by an act passed the eleventh day of February one thousand eight hundred."

The 91st section of the duty law, above referred to, entitled "An act to regulate the collection of duties on imports and tonnage," (volume 3, p. 223, c. 128), enacts "that all fines, penalties, and forfeitures, recovered by virtue of this act, (and not otherwise appropriated,) shall, after deducting all proper costs and charges, be disposed of as follows: —one moiety shall be for the use of the United States, and be paid into the treasury thereof, by the collector receiving the same; the other moiety shall be divided between, and paid in equal proportions to the collector, and naval officer of the district, and surveyor of the port, wherein the same shall have been incurred, or to such of the said officers as there may be in the said district; and in districts where only one of the aforesaid officers shall have been established, the said moiety shall be given to such officer. Provided, nevertheless, that in all cases where such penalties, fines, and forfeitures, shall be recovered in pursuance of information given to such collector, by any person other than the naval officer or surveyor of the district, the one half of such moiety shall be given to such informer, and the remainder thereof shall be disposed of between the collector, naval officer, and surveyor, or surveyors, in manner aforesaid. Provided, also, that where any fines, forfeitures, and penalties, incurred by virtue of this act, are recovered in consequence of any information given by any officer of a revenue cutter, they shall, after deducting all proper costs and charges, be disposed of as follows:—one fourth part shall be for the use of the United States, and paid into the treasury thereof, in manner as before directed; one fourth part for the officers of the customs, to be distributed as hereinbefore set forth; and the remainder thereof to the officers of such cutter, to be divided agreeably to their pay."

Before examining this case upon its merits, it may be proper to dispose of some preliminary objections, not only to the right, but to the quantum claimed by the plaintiffs.

1. It is insisted, that the plaintiffs are not entitled to any share of the forfeitures incurred, under the non-intercourse law, because the act of the 6th May, 1796 [1 Stat. 459], c. 22, making further provision relative to the revenue cutters, is confined to forfeitures incurred under the impost laws, and recovered, in consequence of information given by the officers of these cutters. It is true, that that law is so confined; but the answer to the objection is, that the present action is not founded on the act of May, 1796, but on the 18th section of the act of March 1, 1809 [2 Stat. 528], before referred to, which allows to these officers a certain proportion of the forfeitures incurred for a breach of the non-intercourse law, where they are the informers.

2. That if the plaintiffs are entitled to any thing, it can only be to one-fourth of the forfeitures, the United States being, at all events, entitled to one-half. This is not, in the opinion of the court, the true construction of the 91st section of the duty law, which prescribes the manner in which forfeitures for breaches of the non-intercourse law are to be distributed. If there be no informer, the United States are entitled to one-half, and the custom-house officers to the other. If there be an informer, then, instead of the half, which, in the former case, was given to the custom-house officers, one-fourth is allowed to them, and the other fourth to the informer. But if the informer should happen to be an officer of a revenue cutter, then only one-fourth is reserved to the United States; the same proportion is allowed to the custom-house officers; and the remainder, which is one-half of the whole, is given to the officers of the cutter. It is no argument, to say that this is an unreasonable allowance. The legislature has thought proper to make it, and our duty is to execute its will.

3. The plaintiffs, claiming as officers of a revenue cutter, it is contended, that they cannot recover, without having given their commissions in evidence. There is nothing in this objection, as it was fully proved by the collector of the port of Wilmington, and denied by no witness, that Sawyer was the commander of this revenue cutter, which was under the control of that collector; and that the other plaintiffs were mates on board of her, and that they acted as such officers. The commissions of these officers, being always the same in form, no question has been made, or can occur, as to the construction of theirs; and it is quite sufficient, in this action, that they acted in the capacities mentioned by the collector.

4. The last objection is, that these plaintiffs cannot join in this action; but should have sued separately. This is a question of a good deal of difficulty; and will require more consideration, than it is in the power of the court now to bestow upon it. If the jury, therefore, should find for the plaintiffs, we shall request them to reserve this point.

We come now to the questions which arise upon the merits of the cause. The first is, whether the forfeiture incurred by the Perseverance, was recovered, in consequence of any information given by the plaintiffs, or either of them? The law does not require that the information shall be as full as the evidence which may ultimately be given at the trial, or which may be necessary to establish the forfeiture. It is sufficient, if it be acted upon, induces the prosecution, and contributes eventually to the recovery. Any information, is the expression used in the law; and if, therefore, it should furnish the ground of inquiry, prosecution, and recovery, the in-

formant is entitled to the reward; although he was unable to assert positively, that the offence had been committed. It is not necessary, that the informant should accompany the communication which he makes, by an assertion of his claim to a share of the forfeiture; or, that he should make the seizure, or concern himself with the prosecution, by causing its institution, or providing testimony to support it. With all these things, he has nothing to do. He may even be ignorant, at the time he gives the information, that he has any claim to assert. It is sufficient for him to show, that the information which he gave, caused the prosecution and recovery.

But it has been contended, that, where the information comes from an officer, whose duty it is to furnish it, as in the case of an officer of a revenue cutter, it will be considered as given in the ordinary discharge of his duty; and so not entitling him to the reward, unless he asserts his claim. If there were any thing in this argument, the law would have no operation in favour of those officers, who, the law always presumes, will perform their duty; and yet offers them sometimes an extraordinary reward for doing it. The policy of the legislature, in this case, is obvious, —it was to excite the vigilance of the officers of the revenue cutters, to detect, and to bring to light, violations of the revenue and non-intercourse laws; and to secure their integrity, by such a reward, as would place them above any temptations, which the offenders could offer them.

Having thus given what appears to the court to be the true construction of the law, it only remains to recapitulate the material parts of the testimony. The collector of the district of Delaware has testified, that the first information which he received, respecting the cargo of the Perseverance, was from Sawyer, the commanding officer of the revenue cutter; and he is confident, that he never heard any thing in relation to the rum on board, prior to the information received from him. In confirmation of this fact, and to show the precise nature of the information thus communicated, a letter from Sawyer to the collector, bearing date the 6th of February, 1812, which the witness stated was received the same day, was produced, in which the writer states, that there are strong grounds of suspicion against the Perseverance, to detain her; and amongst others, he mentions that "she has on board 97 hogsheads of rum, which the mate calls aqua ardenti; but which I take to be Jamaica, and that of good quality." On the 13th of the same month, another letter was written by Sawyer, to the collector, repeating the same information, and recommending the appointment of a particular person to taste the rum; and, on the 16th, he again wrote, and informed the collector that the district attorney was of opinion, that the vessel and cargo were liable to forfeiture, and ought to be seized and libelled. The witness further stated, that, in consequence of the first information received from Sawyer, he directed the vessel to be detained; and that one of the officers of the cutter, was put on board of her, for that purpose. That being satisfied the rum was Jamaica, he consulted with the district attorney, as to the course to be pursued, who advised a seizure of the vessel; which would have been done, had he not been induced by the persuasions of the owner, to send her to this district, for trial, under the command of Sawyer, who delivered her to the custom-house officer of this port. In this evidence, we trace the active agency of the commander of the cutter, from the time when he first gave the information respecting the suspected cargo of this vessel, to that when she was delivered into the hands of the defendant, to be proceeded against; and the question for you to decide is, whether the recovery of the forfeiture, which was ultimately obtained, was in consequence of information received from any officer of the revenue cutter. If it was, then,

2d. Was any thing done by the plaintiffs, which amounted to a waiver of their right to a share of the sum recovered? The affirmative is contended for by the defendant, upon two grounds:

(1) Because the plaintiffs consented to the removal of the vessel and cargo, from the Delaware to the Pennsylvania district, which, as it operated to an abandonment of the claim of the collector of that district to a share of the forfeiture, produced the same effect in relation to the claim of the plaintiffs. The answer to this is, that it is made the duty of the collector, where he has probable ground to suspect a violation of the non-intercourse law, to make the seizure, and to proceed regularly against the offending article, in order to obtain its condemnation. If, instead of doing this, the collector, who receives the information, and may legally proceed to enforce the forfeiture, chooses to turn over the business to the collector of another district, and thus to abandon the claim which he might have asserted to a part of the sum to be recovered, the claim of the informant cannot be affected by the transaction, although he should have assented to it; because he has nothing to do with the seizure, or other proceedings. To him it is immaterial where the trial takes place;—his right to a share of the forfeiture, though inchoate, arises from the information, and is consummated by the recovery. His consent to the removal of the property, then, whilst it amounts to the assertion of an interest in the forfeiture, should it be decreed, (for otherwise his consent was not worth asking,) cannot in any manner affect that interest. In short, this is not a case, where a jury would be justified in presuming a waiver. It is much more likely, that the plaintiffs were ignorant of their rights, than that, knowing them, they would voluntarily relinquish the chance of obtaining so considerable a sum of money.

(2) The letter from Sawyer to the defendant, written after the institution of this suit, is supposed to amount to a waiver, at least of his claim to any part of the recovery. Whatever other answer might be made to this objection, this is sufficient, that the letter cannot be construed to apply to the claim, but merely to the suit, the institution of which, in his name, he disavows; and it is a fact, that, notwithstanding that letter, he has persevered in the suit to the present moment.

If the plaintiffs are entitled, under the law, to a share of the forfeiture of this vessel and cargo, and have not waived their claim to it, the only remaining question is—3. Are they entitled to recover any thing; and if any thing, how much, from the defendant? No evidence was given, nor is it even pretended, that any notice of this claim was given to the defendant, by the plaintiffs, or by any other person, until the institution of this suit, in November, 1817; before which time, 4,955 dollars, the supposed share of the custom-house officers, had been paid; the other moiety was not paid into the treasury of the United States, before the year 1818.

If the defendant had paid over the whole of the sum recovered to the United States, and the custom-house officers, before he received notice of the claim of the plaintiffs, he would not have been liable in this action for any part of the sum which he had so parted with; because, being appointed by law an agent to receive, and to distribute the money, (where there is no informer,) between the United States and the custom-house officers, he was strictly in the performance of his duty in so distributing it, unless he had notice that there was an informer, and that an officer of the revenue cutter was that informer. The law could never be so unreasonable, as to punish a public officer for doing what itself had enjoined, unless a certain circumstance existed, of which he had not notice. It is to be remarked, that the distribution of forfeitures, is to be in moieties between the United States and the custom-house officers; and that a different distribution is not to be made, unless there be an informer. Surely, then, if there be an informer, the collector ought to be apprized, before he makes the distribution, who he is. If, for want of such notice, the informer has lost his recourse against the collector, it is attributable to his own neglect; the consequence of which, it would be most unjust to permit him to shift from his own shoulders to those of the defendant. It is obvious, that the difficulty in this case arises from the uncommon circumstance, that the information was given to the collector of a district, within which it was expected the seizure would be made, and where the suit for the forfeiture might have been prosecuted; instead of which, the vessel, with her cargo, was sent by that collector, to the collector of another district, where the suit was instituted and the recovery obtained. In ordinary cases, the collector can never be ignorant on whose information he acts, where there is an informer. The court is therefore of opinion, that the defendant is not liable to the plaintiffs, for any part of the money paid by him to the other officers of the custom-house, or of the share to which the United States are legally entitled.

If the jury should be of opinion, that the plaintiffs were, in point of fact, informers within the meaning of the act of congress as before explained, and that the defendant had not notice of the plaintiffs' claim, as informers, before the 4,955 dollars were disposed of; then, in estimating the damages to which the plaintiffs are entitled, they ought to deduct the sums actually paid to the naval officer and surveyor, the proportion to which he himself was legally entitled, (for the balance is still in his hands,) and the proportion to which the United States were legally entitled, from the net sum received by him, and your verdict ought to be for the residue. Thus—

| | |
|---|---:|
| Amount of recovery, after costs and charges deducted | $9,911 00 |
| Paid the naval officer and surveyor | $3,310 00 |
| Share of the United States | 2,477 87½ |
| Share of the collector | 827 50 |
| | 6,615 37½ |
| | $3,295 62½ |

As to interest, which is claimed from the time this suit was instituted, the court leave that question to the jury.

The jury found for the plaintiffs $3.295.62½ if the court should be of opinion, &c. &c.