## THE CITY OF MEXICO.

### UNITED STATES v. THE CITY OF MEXICO.

*(District Court, S. D. Florida.* June 14, 1887.)

1. SHIPS AND SHIPPING—FORFEITURE UNDER NEUTRALITY LAWS—WHO ARE INFORMERS.

Where the testimony showed that the entire crew of a vessel, which was afterwards seized and forfeited, met the consular agent upon his leaving the ship, and demanded an audience, and made a statement of their suspicions, and the facts on which they were based, and protested against proceeding on the voyage, at which meeting the chief mate took a prominent part, but no steps were taken by the consular agent looking to the seizure of the vessel, but an arrangement was made to proceed on the voyage; that, after the departure of the consular agent. the crew held another meeting, and drew up a formal written protest, setting up the facts before stated, and refusing to proceed on the voyage under any circumstances, which protest was not in the handwriting of the mate, and was signed by all the crew; that, upon the receipt of this protest, the consul began the first official interference in anticipation of seizure, took the crew ashore, and took the sworn testimony of each of the crew upon the charges preferred by them against the officers and passengers of the vessel, at which hearing other members of the crew took as prominent part as did the mate; that, after this investigation, a man-of-war was sent for, and the seizure made: *held*, that the entire crew, and not the mate, were the informers, so as to entitle them to the informer's moiety.

2. SAME—INFORMATION NOT ACTED ON.

Neither a consular officer who furnishes the government authorities with a statement of the facts regarding the sailing and the objects and intentions of a vessel, and does all in his power to thwart or prevent her voyage, and after her seizure furnishes assistance of much value in obtaining evidence, nor a detective employed by such consular officer to obtain accurate information, and upon whose information such officer acts, are informers so as to entitle them to the informer's moiety, where such acts and information do not result in the seizure of the vessel, and it does not appear that any party active in the seizure had any information from such consular officer or detective, or orders or instructions from those they had informed.

3. SAME—NAVAL AND CONSULAR OFFICERS.

United States naval officers, and a consular agent who conveyed information received by them, leading to the seizure of a vessel, to other official authorities, but gave no information except what had been received in the regular discharge of their duty, are not informers.

4. SAME—PROCEDURE—NECESSITY OF PETITION.

> In a proceeding to enforce the forfeiture of a vessel for violation of the neutrality laws, the fact that, after a decree of forfeiture, the case was allowed to remain open for further hearing on the question of who were entitled to a moiety of the proceeds as informers, and that only one person filed a petition making a claim, does not deprive others appearing on the original evidence to be entitled to share as informers.

In Admiralty. Forfeiture. In the matter of informer's moiety.
Proctors for petitioners, viz.:
*James Parker* and *G. Brown Patterson*, for Admiral Jouett and others.
*Phillip J. Joachemsen*, for Consul Gen. Baiz.
*John R. Abney*, for Green.
*John A. Osborne*, for Mehan.
*Louis Z. Kinstler* and *Jefferson B. Browne*, for McLaughlin.

LOCKE, J. This cause having been heard, and a decree of forfeiture pronounced under the law for the prevention of the violation of neutrality, (Rev. St. § 5283; 28 Fed. Rep. 148,) it remained to designate the informer to whose use the one-half of the proceeds should go.

The hearing of the original case, and the evidence presented at it, pointed out who might with good reason be considered the informer; but the question whether there might not be some one else who, upon a fuller hearing of the origin of the case, might have some rights, suggested itself, and the matter was held under advisement, and an opportunity offered for any one to make and support a claim to the informer's share who considered himself entitled. Under this notice Jacob Baiz, consul general of Honduras, at New York; Rear Admiral James E. Jouett, commanding the N. A. squadron; Robert Boyd, fleet captain; Colby M. Chester, commanding the Galena, the capturing vessel; Brooks Carnes, consular agent at St. Andrews, where the seizure was made; John G. Mehan, who was at one time in the employ of Baiz as a detective in this matter; James H. Green, chief mate of the steam-ship; and James McLaughlin, one of the crew,—have filed petitions.

Although there has been found no decision touching the question of an informer under this statute, there can be no doubt but what any ruling upon the same subject, under customs or internal revenue laws, or any class of forfeitures, will apply with full force wherever any question of doubt arises. An "informer," in the legal as well as the ordinary sense of the term, whether the information he gives applies to customs, internal revenue, criminal matters, or forfeitures for any other reason, is he who gives the information which leads directly to the seizure and condemnation, regardless of the questions of evidence furnished, or interest taken in the prosecution. *Westcot* v. *Bradford*, 4 Wash. C. C. 492; *Sawyer* v. *Steele*, 3 Wash. C. C. 464; *U. S.* v. *Simons*, 7 Fed. Rep. 709; *One Hundred Barrels Whiskey*, 2 Ben. 14; *U. S.* v. *Isla de Cuba*, 2 Cliff. 458.

"If the officer seize upon the information, that act invests an inchoate right in the informer, *who has given the information upon which the seizure was made,* which is consummated by a condemnation." *Westcot* v. *Bradford*,

*supra; Jones* v. *Shore's Ex'r*, 1 Wheat. 462. It must be the information upon which the seizure was made. *Van Ness* v. *Buel*, 4 Wheat. 74.

Mehan, a professional detective, having learned of the purchase of this steam-ship by Hollander, informed Consul General Baiz, in whose employ he had been in other matters, of this fact, and of such circumstances connected with the purchase as he considered of importance; who, feeling from his official position particular interest in such information, at once took Mehan into his employ to watch the vessel, and obtain more definite knowledge. Baiz also transmitted a history of the case to the secretary of state at Washington, had several interviews with the collector of customs at New York, regarding her sailing, and the objects and intentions of the voyage, and succeeded in preventing the shipping of the arms and ammunition. He also visited Washington, and had interviews with the secretary of state and attorney general, and had correspondence with the district attorney of New York, regarding both this vessel and the steam-ship Framm, which finally carried the arms and ammunition. There is no doubt but what he did everything in his power to prevent or thwart her voyage, and to influence the authorities at New York and Washington to interfere, but all to no purpose. The principal recognition his information appears to have received was a letter from the attorney of the United States at New York, inquiring what evidence he had, and promises from the departments at Washington that the matter should be attended to. Surely it did not result in a seizure of the vessel; and although, after the capture, his assistance in obtaining evidence for use in the trial was of much value, it does not appear that any party who was active in the seizure had any information from him, or orders or instructions from those whom he had informed.

The petitioner Mehan, who first obtained information of the sale to Hollander, and reported it to Baiz, acted after that entirely under him, and conveyed his information through him. He suggested the visit to Washington, and accompanied him to the collector's office; but his information accomplished no more than did that of Baiz, as they were merged before they reached any official. His information had no weight in the seizure, as it became that of Baiz, and amounted to no more.

The history of the case shows that although Consul Baiz did all he could to interest the officers of the government in his behalf, and satisfy them that enough was being attempted to justify or demand their action, he failed in doing so, and the steam-ship cleared with a legal clearance, and all effect of his information was left behind. There is nothing to show that either the consul at St. Andrews, or the naval authorities who finally made the seizure, had instructions from any one growing out of the information of Baiz, given at Washington or New York; but everything shows that nothing was done by any one in authority to interfere with her movements until after the positive stand taken by the crew.

Green, the first mate, has by his own testimony in this hearing made a very strong case in his own behalf; and were this a cause by itself, and the only testimony to be considered that taken and presented with the petitions for the informer's share, there could be no doubt but what he

has put himself in a position where his claim could not be questioned; but this is but a part of a case,—a supplementary hearing of one already heard in part, and in which the judgment to be given is but one of equal importance, and as necessarily following from the whole trial of the case as the judgment of forfeiture already pronounced. The entire vessel is in no respect forfeited to the United States, to whom the informer can look for his share, but it is forfeited to his use; and, had the general hearing been fully satisfactory upon that question, the informer should have been declared in the same judgment with the forfeiture.

The entire testimony in the main case is before the court in the question now pending, and is considered as assisting in determining it. That testimony shows that while questions, suspicions, and surmises had existed among the crew, and applications to consular officers had been made by different members of it at the different ports, nothing had been done which looked towards a seizure until they were about to clear for Kingston, Jamaica, from St. Andrews. The testimony of disinterested witnesses shows at this time the circumstances to have been about these: The consular agent at St. Andrews, being on board in the cabin with Capt. Kelly a short time before the contemplated leaving of the vessel, upon coming out of the cabin, being about to leave the ship, found the entire crew assembled in the starboard gangway, demanding audience. This being granted, statements of their suspicions, of the facts they knew, and their protests against proceeding, were made. Ayres, the chief cook, says he was the spokesman who addressed the consul. Greene says: "They told him they did not wish to proceed any further in the vessel." He says in his testimony upon this question that he brought the consul down to the crew after he had told him his story, but this does not appear to have been the case, when the testimony of Capt. Kelly is considered. But yet no step was taken looking to a seizure, and the consul's suggestion that he should go to Kingston with them was accepted, and arrangements made for them to proceed on the voyage. After his leaving that night, the crew had another meeting, and further considered the case, and upon his return in the morning presented a formal written protest, setting up what they had before stated, and refusing to proceed under any circumstances. This the consul declared looked serious, necessitating some action by him, and he began the first official interference in anticipation of seizure. This written protest was not in Greene's handwriting, and was signed by all the members of the crew. The consul took all the crew ashore, and took the testimony of each upon the charges preferred by them against the steam-ship, master, and passengers. At this hearing, as shown by the records of the consular investigation, several members of the crew took a more prominent and active part than did Greene. It was only after this thorough investigation and examination under oath that a schooner was chartered, and sent for a man-of-war, and the consul general, upon the arrival of whom the investigation was continued and the seizure made.

Without doubt Greene joined with the rest of the crew in giving information and protesting against proceeding, but that he should have the

entire credit as informer I cannot for a moment accept. Having been before the court as witness in the case several times, I feel compelled to say that, weighed in the light of his former testimony, his later *ex parte* statements in his own behalf should be taken with great allowance. He had had ample opportunity in open court, and in the presence of other actors in the same transaction, to state his entire connection with the giving of information, and bringing about the seizure; but the case he made then was materially different from what he makes now.

Without doubt, certain members of the crew were more active and influential in bringing about the final result; but it was "the crew" who demanded to see the consular agent in the gangway, and who on the next morning, protested in writing. The Galena was dispatched to St. Andrews upon application from them, through the consulate, and not by orders from Washington; and the consular agent was moved to action by their protest, and not by advices from the state department. Without their action, the City of Mexico would undoubtedly have awaited the arrival of the Framm, which reached the port a few days later with the arms and ammunition,—with what results it is difficult to surmise.

Greene and McLaughlin are the only members of the crew who have appeared as petitioners, and it is claimed that Greene, being at the head of the crew and representing them, should be treated as informer, both for that reason and because no one else has made claim and presented evidence as such informer. Neither of these reasons do I consider sufficient to exclude others who may, from an examination of the principal case, appear to have any rights. This is not a new case, nor did it require a petition to give an informer standing in court as such. The decree to the informer could as well have followed or been embodied in the general decree of forfeiture without an opportunity for a petition as after one had been filed, had the court been satisfied that the entire testimony touching the question of informer had been heard; and, certainly, holding the case open to give others an opportunity to be heard cannot defeat those already shown to be entitled.

In *Sawyer* v. *Steele*, 3 Wash. C. C. 464, the officers of the revenue cutter sued for an informer's share; and although, the suit being at common law, the question was raised whether they should sue jointly or severally, there was no question but what they might share as joint and common informers. In this case I am satisfied that the crew were the informers, both technically and actually; and, although some were more prominent than others, it is impossible to discriminate in their favor. I think every name was signed to the written protest, and all are entitled to share.

The naval officers and consular agent in whose behalf a petition has been filed did their duty as officers in conveying the information received to other official authority, but no information was given by any one of them but what had been received in the regular discharge of his duty. It was in the performance of duty touching this subject-matter, and under special orders to investigate, that their knowledge was acquired, and reporting the same cannot certainly give rights as informers. It is there-

fore ordered that, after the payment from the fund now in the registry of the court of the proper costs in this hearing, the balance be paid those who were the crew of the steam-ship City of Mexico, as appears from the pay-roll as filed herein, in the petition for seamen's wages, and the same be divided between them in proportion to the several rates of monthly wages therein stated.