## Case No. 15,448.

UNITED STATES v. The ISLA DE CUBA.

[2 Cliff. 458.] [1]

Circuit Court, D. Massachusetts. May Term, 1865.

SLAVE TRADE.— CONDEMNATION OF VESSEL — DISTRIBUTION OF PROCEEDS—INFORMERS.

A master of a vessel, while in a foreign port, becoming convinced that it was the intention of certain persons on board to employ her in the slave-trade, brought the vessel to a port in the United States. When he arrived at the port for which he had sailed, he was towed into the harbor by a steamer, the master of which, learning from some person or persons on the vessel that she had been intended for the slave-trade, went, immediately upon landing, to the United States district attorney, gave information of the intended slaver, and made a sworn statement thereupon. The master of the vessel, on the following day, also gave the intelligence to the attorney, having, on the day previous, presented the ship's papers at the custom-house, and made known the facts to the revenue officers. After the decree of distribution awarding the prosecutor's moiety to the captain of the intended slaving vessel, and after the payment of the moiety in conformi-

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

ty to the decree, upon petition by the master of the steamer to open and set aside the decree of distribution, it was *held*, that the award had been properly made under the act of the 20th of April, 1818 [3 Stat. 450], and that this being the case, it was not necessary to decide whether it was competent for the court to open the decree and take jurisdiction of the second petitioner's claim.

[Cited in U. S. v. Simons, 7 Fed. 712; The City of Mexico, 32 Fed. 106.]

This was a petition to open a decree of distribution, in a case of forfeiture of a vessel and cargo which had been equipped and prepared for the purpose of procuring negroes, and persons of color from a foreign country, to be held and disposed of as slaves. The decree of condemnation and forfeiture was entered September term, 1864, in this district. [Case No. 15,447.] The statement of the petitioner was, that he was the prosecutor in the case, and as such, was entitled to a moiety of the forfeiture, but that he was prevented by circumstances detailed in his petition, from presenting his claim prior to the decree of the district court [Id. 15,449], where the prosecution was commenced. The decree of distribution awarded the moiety claimed by the petitioner, to the master of the vessel, Levi W. Turner, who brought the vessel into the port of Boston from the port of Saint Michael. The petitioner prayed to set aside the decree of distribution, to the end that he might have an opportunity to present his proofs to the court, and show that he was the only person entitled to a moiety of the forfeiture. Notice was served both upon the district attorney at the time of this petition, and upon his predecessor in office at the time of the commencement of the proceedings against the vessel, and up to the final decree of distribution. No claim was ever filed by the petitioner in this case, or in the court below, until after the appeal was made, but the claim was filed in the district court, three days after the allowance of the appeal to this court. Nothing of the kind, however, appeared in the transcript of the record, nor was the attention of this court drawn to the matter until after the decree of distribution was made. The decree of the district court was in all things affirmed. Considerable delay ensued because the proceeds of the sale of the vessel had not been sent up with the transcript of the record, so that the decree of distribution was not made until the term previous to this one. The petition of Levi W. Turner was filed by the district attorney who filed the libel of information, and prosecuted the suit, but the matter was not adjudicated, until it had been referred to his successor in office, who reported that the facts stated in the record were true. The petitioner in this case complained that the matter was adjudicated before he was heard, but it appeared that the person who filed his petition in the court below was not a member of the bar, and no appearance was ever entered in the petitioner's behalf, until after the decree of distribution was entered and the money paid over to the parties therein named.

C. T. Russel and H. A. Scudder, for petitioner.

R. H. Dana, for the United States.

CLIFFORD, Circuit Justice. Two principal objections are taken to the claim of the petitioner by the district attorney.

It is insisted that he was not the prosecutor within the meaning of the act of congress, and consequently, that he has no claim upon the merits of his petition; and also, that it is not now competent for the court to open the decree and take jurisdiction of the petitioner's claim.

The proofs show that the bark sailed from New York on the 12th of August, 1858, bound on a voyage to Loango on the coast of Africa. Her master at that time was Jonathan S. Dodson, and Levi W. Turner was the mate. She arrived at Fayal on the 2d of September of the same year, and remained there in the stream some eight or ten days. During the voyage the suspicions of the master had been aroused that certain Portuguese or Spanish passengers intended to control the voyage, and that the real purpose of it was to engage in the slave-trade. Accordingly he directed the mate to examine the casks in the lower hold, and see what they contained. The supercargo's documents showed that there were twenty-two thousand gallons of fresh water on board; and upon an examination of the casks which had been shipped as oil casks, enough was ascertained to warrant the conclusion that the statement of the documents was true. Without entering into details, suffice it to say that the cargo was made up of such articles as are usually found in vessels clandestinely intended for that traffic, and was of a character fully to justify the suspicions of the master. They arrived at Saint Michael on the 12th of September, and remained there till the 22d of the same month. While there, they discharged twenty-seven bales of dry goods, and the passengers took on board ten bags of beans; and it was during the time the vessel lay there that the master communicated his suspicions to the mate. He was to receive pay at that port, and he told the mate that when he got his money, he should leave the ship, give him a letter, and order him home with the vessel, and distinctly informed him that he suspected it was an illegal voyage. The record also shows that the mate was appointed master with the approval of the consul, and that the master, who was sick, left the vessel. His directions were that the mate should return to New York, and he advised him to keep all his papers out of the way, so that they might not be stolen by the passengers. The vessel sailed from Saint Michael on the 22d of September. Levi W. Turner, master, and when three days out, he called all hands, and

stated to them that he suspected that the voyage was illegal, and that he was going to return to the United States, as advised by the former master. Some of the passengers shed tears, and wanted him to run into Flores, and put them ashore. They offered him $1,000 if he would do so, but he declined, saying that he would not go any nearer the land than he was. Willing to be rid of them, however, he offered them a boat of four or five tons; and they left in her, taking with them their trunks, one or two bales of goods, and some provisions. Considering them dangerous, he allowed them to leave, and, perhaps, it is not going too far, to say that the circumstances afforded some justification for his course, as they had small arms aboard. such as muskets, swords, and cutlasses, and plenty of means to bribe the crew, if any had been wicked enough to listen to such overtures.

Faithful to his duty, the master brought the vessel to the United States, and, finding it more convenient, he sailed for this port. The petitioner in this case towed the vessel into the harbor, and in the course of his employment learned from the seamen that the voyage was regarded as an illegal one. He had no knowledge upon the subject, or means of knowledge, except what he derived from the crew. Beyond doubt he performed his duty in towing the vessel into the harbor properly, and when that was done, he at once repaired to the office of the district attorney and communicated the facts which he had learned on board the vessel, but he had none of the papers belonging to the vessel, and no personal knowledge upon the subject. Instead of going immediately to the office of the district attorney, the master, as was his duty, went to the custom-house and presented his papers there, and made known the circumstances to the proper revenue officers. On the following day he called upon the district attorney, and, through the proper officer of the customs, the papers were placed in his hands. The statement of the petitioner is, that the district attorney, when he called on him after leaving the vessel at her anchorage, took down in writing the facts stated by him, and caused him to make oath to the same, and that the district attorney thereupon commenced proceedings against the bark and her cargo. Recurring to the libel, however, it will be seen that it is in the usual form, and is signed only by the district attorney. But that is of little importance, as it appears that the master was ever after recognized by the government as the prosecutor, and is in fact the person who furnished all the evidence to sustain the libel of information.

By the act of congress of April 20, 1818, one moiety of such a forfeiture is granted to the use of the United States, and the other to the use of the person or persons who shall sue for such forfeiture. and prosecute the same to effect. 3 Stat. 451. Take the facts

as stated, and it is not possible to say that the petitioner sued for the forfeiture or prosecuted the same to effect. Even if the moiety was given to an informer, and not to the prosecutor, strong doubts are entertained whether the petitioner would justly be entitled to the claim in preference to the master. He had no knowledge upon the subject, except what he had derived on board the vessel, and all of that which was reliable emanated from the master. Suppose one of the crew, while the master was going to the custom-house, had left the vessel and first communicated the fact to the district attorney, would he have been entitled to claim the moiety? I think not, even if the law gave it to an informer, as his conduct, in the case supposed, would be a fraud upon the master,' and consequently would not be upheld by the courts. But whether so or not, it is clear in this case, and in my judgment, beyond all doubt, that the master was the person and the only person, who could properly make the claim.

Entertaining no doubt upon the subject, I do not find it necessary to consider the other question.

*The prayer of the petition is denied.*