## Case No. 4,782.

### FIFTY THOUSAND CIGARS.

[1 Lowell, 22;[2] 2 Int. Rev. Rec. 108.]

District Court, D. Massachusetts. Sept, 27, 1865.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

R. R. Bishop, for Smith.

W. J. Forsaith, for Luce and the other petitioners.

LOWELL, District Judge. In this case a large quantity of cigars. and a small quantity of sugar and molasses, have been condemned and sold, having been found on board the American schooner Atlantic under circumstances which showed very clearly an intention to smuggle them into the United States. Several persons have filed petitions for the share of the proceeds of the forfeiture provided by sect. 91 of the collection act of 1799, which enacts, among other things, that in all cases where such fines, &c., shall be recovered, in pursuance of information given to the collector, by any person other than the naval officer or surveyor of the district, a certain share shall be given to such informer.

[2] [The petitioner Smith, who is a deputy collector of customs at Portland, was told by a person in the trade in which the schooner was engaged, and who appeared to have adequate means of knowledge, that a large quantity of cigars were on board the vessel, and

[2] [From 2 Int. Rev. Rec. 108.]

were about to be smuggled. This person most positively refused to inform him against the goods himself, or to let his name appear in any way, and he has not made claim in this cause, and so far as appears is not known to any one connected with the affair, excepting Mr. Smith. He evidently intended that Smith should inform against the goods. The vessel was reported as then lying at Holmes Hole, in Massachusetts, which was the fact; she having put in there on her voyage from Cuba to Winterport, in Maine. It being Saturday, Smith, finding that he could not reach Holmes Hole before Monday night, requested Mr. Washburn, the collector at Portland, whose name, he thought, would be better known than his own, to telegraph these facts to the collector of the port, where the vessel was lying. Mr. Washburn accordingly sent a telegram, addressed to the "Collector of Customs, Holmes Hole," saying that he had information that a large quantity of cigars in the schooner Atlantic were intended to be smuggled. Holmes Hole is a port of the collection district of Edgartown, and has a custom house under the charge of a deputy collector. The collector resides at Edgartown, some eight miles from Holmes Hole. Mr. Beetle, the deputy collector, received this despatch on Saturday evening, and read it, and at once put Mr. Andrews, an inspector of customs, on board the schooner with instructions not to permit anything to be taken out of her. The next morning, the wind coming fair, the schooner sailed, after sending the inspector on shore; but the wind again changing, soon returned, and the inspector was put on board a second time by Mr. Beetle, with the further instructions not to leave the vessel. In the course of the day, Mr. Beetle, as he says, sent Mr. Luce, another inspector, to Edgartown, to inform Mr. Vinson, the collector, of the facts, and to ask the assistance of the revenue cutter J. C. Dobbin, then at that port. This course he took to save the expense which would be incurred in calling upon persons not in the employ of the government. But he was resolved to stop the vessel at all hazards, if she should attempt to sail before the cutter arrived. The cutter came round that night with orders from the collector to make a thorough search for cigars, and if any were found to bring the vessel to Edgartown; and upon careful examination the cigars were found carefully concealed behind a bulkhead. Mr. Beetle, Mr. Luce, Mr. Andrews and Capt. Usher, of the cutter, all claim as informers under the act; the two last on the ground of their diligence and success in searching for and discovering the goods; Mr. Luce, partly on that ground, and partly for having given information to the collector before the search was ordered, which is also Mr. Beetle's ground for claim. Mr. Washburn makes no claim, and says he acted at the suggestion and as the agent of Mr. Smith, whom he supposes to be, in point of fact and law, the sole informer.

Now it is very clear, in the first place, that some officers of the customs other than the collector himself and the surveyor and naval officer (all of whom share in all these forfeitures), may themselves be informers. This has been decided so far as inspectors and officers of revenue cutters are concerned, and perhaps it is true of deputy collectors.][2]

That this court has jurisdiction of this controversy is clear. Hooper v. 51 Casks of Brandy [Case No. 6,674]; Westcot v. Bradford [Id. 17,429]; McLean v. U. S., 6 Pet. [31 U. S.] 404.

It is not denied that some officers of the customs, other than the collector himself and the surveyor and naval officer, all of whom share in all these forfeitures, may themselves be informers. This has been decided so far as inspectors are concerned, and perhaps is true of deputy-collectors. Hooper v. 51 Casks of Brandy, ubi supra; Brewster v. Gelston, 11 Johns. 390; Sawyer v. Steele [Case No. 12,406]. And, as to officers of revenue cutters, the act itself is explicit in their favor. But I am not aware that it has ever been said or thought that an officer, being charged with the special duty of searching a vessel, in purusance of definite information given by another person, could become the informer by reason of the diligence, fidelity, and success with which he prosecuted the search, and found what he was sent to seek. To allow this would be contrary to the general principles of law, and to the intent of the revenue laws, which expect the collector and his subordinate officers to pursue the course indicated by the information with all the means and effort that may be necessary.

Who, then, gave the collector the information in pursuance of which this search and seizure were made, and the forfeiture was recovered? Mr. Beetle and Mr. Luce each says that he did; the former, because he received the telegram and sent it to the collector; and the latter because he carried the telegram, and gave, as he says, some oral information. Mr. Luce denies that Mr. Beetle "sent" him to the collector, and says that he agreed with Mr. Beetle, that, as the wind would keep the vessel in port, it was better to consult with the collector, and to procure the services of the cutter. There is no doubt that he carried the telegram, with Mr. Beetle's consent; and whether he is to be considered as Mr. Beetle's messenger, or not, is immaterial, in the view I take of the case. Mr. Vinson says, in his deposition, that, acting on the despatch, and on oral information received from Mr. Luce, he ordered the search and conditionally the seizure, and that either information would have been sufficient. It is to be regretted that Mr. Vinson should have made this general statement, which is calculated to leave an erroneous impression. The evidence shows quite conclusively that Mr. Luce had no informa-

---

[2] [From 2 Int. Rev. Rec. 108.]

tion to give, beside the telegram and its contents, which was of any importance. Neither he nor Mr. Beetle knew any thing about the vessel or her cargo or papers, excepting that no cigars were set down in the manifest; a fact of no importance in itself, and which had not attracted Mr. Beetle's attention before he read the despatch, and was not calculated to do so, any more than the absence of all other goods which might, by possibility, have been on board. When the despatch was received, he recollected, or found by examining his records, that no cigars were mentioned in the manifest. But this fact was included in the information given by the despatch; for, if there were cigars on board intended to be smuggled, they would certainly not be found in the manifest. So that this fact, independently known to him, only confirmed the despatch to this extent, that if it were true, as therein stated, that a large quantity of cigars were on board, then its further statement that they were intended to be smuggled, was also probably true. I say this is abundantly evident from all the testimony in the case, including Mr. Luce's affidavit and from the subsequent particular explanation of the collector himself to what Mr. Luce did tell him. Now it is not to be believed that a prudent collector would have seized this vessel or have searched her on the mere information that she had no cigars on her manifest. So, then, in point of fact, the information which Mr. Luce orally gave, besides the above-mentioned fact, unimportant of itself, could only have been that he had read the despatch and believed, from the known character of Mr. Washburn, that it was likely to be well founded. But this was information which Mr. Vinson hardly required, and the giving of which cannot constitute Mr. Luce the informer in this case.

Again, it is assumed, that the collector must personally receive the information which is the foundation of such a claim; and thereupon it is argued that Mr. Beetle and Mr. Luce, or one of them, as the evidence may be thought to favor the views of one or the other, appropriated the information contained in this telegram, and gave it out again to the collector, as their own, and so became the informers. But, on this supposition, they had no right to read the telegram, or reading it, to do any thing but forward it as quickly as possible to the collector. The law does not recognize a title to telegrams, or their contents, acquired by appropriation by persons intervening between the sender of the despatch and the person to whom it is addressed. The telegraphic operator, who has not filed a claim, would stand, in this respect, full as well as these petitioners: he was nearer the source of knowledge, and his position was not more confidential. But the assumption is itself without warrant. The deputy-collector has, in law, a recognized position, with all or nearly all the powers

of a collector; insomuch that, for example, an oath required by statute to be taken before the collector is well taken before his deputy, without proof of the absence or inability to act of the principal; U. S. v. Barton [Case No. 14,534].

It is plain, therefore, that Mr. Beetle had power to receive this despatch for the collector, and to act on it. He was the collector, for all purposes, at Holmes Hole, and the moment he received the despatch, the collector had, in law, received it; the information had been officially communicated, and the inchoate right to the reward had attached. All that was done after that was executive, and was in pursuance of the information so given and received.

I must decide, therefore, that Mr. Smith was the person and the only person who gave to the collector of the district of Edgartown the information, in pursuance of which the forfeiture of the cigars was recovered, and is entitled to one-fourth of their net proceeds. The evidence does not clear up the question about the sugars, and their value is comparatively trifling. I cannot say that any one informed against them, as the case is presented. The form of decree is shown in Jones v. Shore, 1 Wheat. [14 U. S.] 475.

Mr. Smith adjudged sole informer.