ONE HUNDRED BARRELS OF CEMENT (UNITED STATES v.). See Case No. 15,-945.

ONE HUNDRED BARRELS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 15,946.

ONE HUNDRED BARRELS OF HIGH WINES (UNITED STATES v.). See Case No. 15,947.

ONE HUNDRED BARRELS OF SPIRITS (UNITED STATES v.). See Case No. 15,-948.

## Case No. 10,526.

ONE HUNDRED BARRELS OF WHISKEY.

[2 Ben. 14; [1] 6 Int. Rev. Rec. 179.]

District Court, S. D. New York. Nov., 1867.

### WHO IS AN INFORMER.

1. Where C., being advised that whiskey was being taken from a distillery without payment of tax, went to the district attorney of the United States, and stated the facts in general, without naming any place, and afterwards procured and gave to the district attorney an affidavit, made by T., setting forth certain specific violations of law, and T. afterwards made an affidavit contradicting his first one, and alleging that he was drunk when he made it, and made it from purposes of revenge, and the property was afterwards seized, and a libel filed to condemn it, and R., a special revenue agent, being directed to examine into the case, found conclusive evidence of entirely different frauds, whereupon the property was condemned: Held, that, under section 179 of the internal revenue act of June 30th, 1864 [13 Stat. 305], as amended by Act July 13, 1866, § 179 [14 Stat. 145], C. was not entitled to the informer's share, and R. was entitled to it.

2. As between C. and T., the latter would be entitled to the informer's share.

3. It is not the one who gives information which leads to the seizure of property, but the person who gives information of the cause which leads to its condemnation, who is entitled to the informer's share.

[Cited in U. S. v. Simons, 7 Fed. 712; The City of Mexico, 32 Fed. 106.]

This was a libel of information, filed November 26th, 1866, on behalf of the United States, against "100 barrels of whiskey, and all the tools, implements, instruments and personal property whatever, found in the distillery, 48 Broadway." It averred, that the property proceeded against had been seized on the 23d of November, 1866, as forfeited. On the 7th of January, 1867, on the consent of the claimant of the property, a decree was entered, the purport of which was to condemn all of the property except the whiskey, and release it to the claimant, in consideration of the payment by him, into the registry of the court, of $2,000, which had been fixed by appraisement as its value, and to con-

demn the whiskey and release it to the claimant, if he should pay the internal revenue tax upon it in thirty days. The $2,000 was paid into court. On the 2d of July, 1867, an order was made by the court, referring it to John A. Osborn, a commissioner of this court, to ascertain and report to the court the facts and his opinion thereon as to who was the informer entitled to the moiety of the moneys paid into court. The commissioner reported that A. B. Clarke was entitled to be adjudged the informer, and to receive the share of the proceeds provided by law for the informer. There were three persons, each of whom claimed to be entitled to the whole of the informer's share in the case, A. B. Clarke, Henry J. Trumble, and William Richards. Richards excepted to the commissioner's report, on the ground that the commissioner erred in reporting in favor of Clarke as the informer, and ought to have reported in favor of Richards. [The case has been argued upon the testimony, the report and the exception.] [2] Clarke and Richards were examined, each on his own behalf. It appeared that Clarke, being advised that whiskey was taken from the distillery, No. 48 Broadway, without the payment of the tax upon it, went to the district attorney, and stated the facts in general, without naming any place. The district attorney directed him to procure affidavits. He drew an affidavit, which was sworn to by Trumble on the 9th of November, 1866, and formed part of the testimony. In that affidavit, Trumble, who had been an employee of the distillery, but had been discharged, stated, as the frauds which had been committed, that false dates in inspection brands had been put upon barrels of rum sent away from the distillery, that 200 barrels of the rum were then in a store in Morris street, naming it, and 150 barrels of the rum were then in a store in Water street, naming it, and large quantities were at other places, naming them, away from the distillery, and that 75 barrels of the rum had been sent to Boston, without any tax having been paid on them, and without having any inspector's brand on them. This affidavit Clarke gave to the district attorney. On the 15th of November, 1866, Trumble made another affidavit, utterly contradicting his first one, and stating that he had been discharged from employment in the distillery for drunkenness, and, while still drunk, encountered Clarke, and, for revenge, told Clarke what was contained in the first affidavit, and was drunk when he swore to it, and that he knew of no reason why a complaint should be made against the distillery, and knew of no violations of law there. This second affidavit of Trumble was supported by the affidavits of three other persons, one of whom was the father, and one the brother, of Trumble. The purport of them was, that Trumble was a habitual drunkard, and not to be believed on

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [From 6 Int. Rev. Rec. 179.]

oath, and had been discharged from employment at the distillery for drunkenness, and had offered to withdraw for money the charge contained in his first affidavit. After all these affidavits were presented to the authorities, the seizure referred to in the libel of information was made, on the 23d of November, 1866, and the libel was filed. In December, 1866, Richards, who was a revenue agent, residing at Washington city, was directed by the commissioner of internal revenue to advise with the district attorney in regard to the case as it then stood. The affidavits above referred to were exhibited to Richards, and also two other affidavits, which were in evidence, in contradiction of a statement in Trumble's first affidavit, and also the report of a revenue inspector, made after the seizure, which was not in evidence. Richards then went to the distillery and questioned the proprietor and other persons there, and examined the premises, and discovered that the spirits were conducted from the worm of the still to a large spirit tank not in the cistern room, in violation of law, and that the proprietor had not complied with the law in regard to keeping his books and making reports. These facts Richards reported to the district attorney, and he and Richards came to the conclusion that on those facts the property could be condemned. The district attorney, after the affidavits in contradiction of Trumble's first affidavit had been presented to him, had, in a letter to the commissioner of internal revenue, stated that, in view of such contradiction, he regarded the case as a doubtful one. In consequence of this Richards was directed to make the investigation. After all this had taken place the claimant consented to the condemnation of the property represented by the $2,000.

The provision of the 179th section of the internal revenue act of June 30th, 1864, as amended by the act of July 13th, 1866, was, that when any sum was received for a fine, penalty or forfeiture, under a judgment or decree in a suit, such share of it "as the secretary of the treasury shall by general regulations provide, not exceeding one moiety nor more than five thousand dollars in any one case, shall be to the use of the person, to be ascertained by the court which shall have imposed or decreed any such fine, penalty or forfeiture, who shall first inform of the cause, matter or thing whereby such fine, penalty or forfeiture shall have been incurred."

The commissioner reported, that the first information which led to the seizure of the property was furnished to the government officials by Clarke; that no other information, on which the property was seized, was lodged, except that furnished by Clarke; that the property was seized on that information, and had been held ever since it was so seized; that the libel was filed on that information and seizure; that Richards had no connection with the case till after the seizure was made and after the libel was filed; that the information or facts which Richards furnished to the district attorney could be considered only in the light of evidence to justify a condemnation of the property seized, and could not reach back to the time of seizure and deprive the person who first called the attention of the government to the place, and furnished such information as led to the seizure, of the right which vested in him as informer; that the question being, whether the information which led to the seizure and the libelling, or the evidence subsequently obtained, which was necessary to condemn the same, was to control in determining who was entitled as informer, he was of the opinion that the person who gave the information on which the seizure was based was the informer; and that, as the property in question was seized on Clarke's information, and never abandoned, Clarke was entitled to be adjudged the informer.

S. G. Courtney, U. S. Dist. Atty., for Richards.

E. F. Brown, for Clarke.

BLATCHFORD, District Judge. The report of the commissioner proceeds upon an erroneous view of the statute. The informer's share is not given to the person who first gives information on which property is seized, but to the person who first informs of the cause, matter or thing whereby the forfeiture was incurred. In most cases, the distinction is unimportant and does not arise. The property is generally seized, libelled and condemned for the cause of forfeiture pointed out by the information furnished by the informer before the seizure. But this case illustrates the distinction between information given on which property is seized, and information given as to the matter whereby the forfeiture was incurred. And the distinction is a very proper and sound one. In this case, information as to specific frauds was furnished with considerable detail in the first affidavit of Trumble. On that information the property was seized and the libel was filed. But the only conclusion that can be arrived at from the evidence is, that if Richards had not investigated the case and examined the premises, the government would never have obtained a condemnation of the property. The information furnished by Trumble was utterly worthless to the government, as information of any cause whereby a forfeiture of the property had been incurred. The property, it is true, was seized and libelled on that information, on the assumption that it was true, but, as it must be held, on the evidence, to have been false, the seizure and libelling stand as having been made on no information whatever from Clarke. The government received, from what was communicated to it by Clarke, no information which was of the least benefit to it, as to the existence of any cause for which it could enforce, by condemnation of the property, any forfeiture that had been incurred. The statute intends that the re-

ward shall be given to the person who gives information of the cause for which the government can condemn the property. The condemnation is what the government aims at. It is not its policy to seize property and file a libel on false information given by one person, and afterwards condemn it wholly on true information given by another person, and then bestow the informer's reward wholly upon the former. That is this case, if, on the evidence, Clarke is to be adjudged the informer. Such is not the law. No forfeiture of anything was incurred on account of any cause, matter or thing contained in Trumble's first affidavit, and for the very good reason that no cause, matter or thing contained therein had any existence in fact. The error of the commissioner consists in holding that, as Clarke furnished information on which the property was seized and libelled, a right vested in him as informer; and that, as Richards only furnished evidence which justified a condemnation of the property, he is not entitled to be adjudged the informer. It is because Richards, in this case, furnished the information which justified the condemnation that, he was the informer; and it is because Clarke furnished no information which justified a condemnation that he was not the informer. If Clarke had furnished information of any fact which was true as a cause of condemnation for a forfeiture incurred, the case might have been different.

The exception taken by Richards to the report of the commissioner must, therefore, be allowed. If, however, any party interested shall desire to put in further testimony on the subject, or to further examine or cross-examine any of the witnesses already examined, an order may be entered referring the matter back to the commissioner for that purpose.

I have considered the question wholly as one between Clarke and Richards, inasmuch as Richards alone excepts to the report; but, in view of the fact that there may be further testimony and another report, it is proper to say, that, irrespective of the claim of Richards, and as between Clarke and Trumble, on the version of the affair given by Clarke himself, it is difficult to see why Trumble would not be entitled to be adjudged the informer. When Clarke first called on the district attorney, he named no place, and, therefore, gave no information, in the sense of the statute. When he came the second time, all that he testifies to having done was to hand the district attorney Trumble's affidavit. On this state of facts, if the affidavit contained a true statement of any cause for which a forfeiture of the property had been incurred, Trumble was the first person who informed the government authorities of such cause.