## Case No. 15,177.

UNITED STATES v. FUNKHOUSER et al.

[4 Biss. 176.] [1]

District Court, D. Indiana. May, 1868.

INFORMERS—THEIR RIGHTS—SHARE IN PROCEEDS.

1. The information must be given to some government official who has the power and duty to act thereupon, and if several causes exist information of any one of them is sufficient.

2. The information must be a plain statement in writing of some one substantial cause, matter, or thing, whereby a fine, penalty or forfeiture shall have been incurred. And it should be sworn to, if required by the officer.

3. A party claiming to share in the judgment must be the first informer, and his information must be substantially true, and capable of proof.

4. Whether, under any circumstances, a special agent of the revenue is entitled to claim as an informer,—quære.

[Cited in U. S. v. Simons, 7 Fed. 714.]

5. The claim of an informer can only date from the time when he actually gave the proper formal information—not when he ascertained the facts.

6. The share of the informer must be taken from the net, not the gross, proceeds.

At law.

Hanna & Knefler, for claimant Little.

J. W. Gordon, for claimants Lamb and Chadwick.

McDONALD, District Judge. This was a proceeding for the adjudication of a forfeiture of a distillery, distilling materials, machinery and apparatus, and a large quantity of whisky, the property of Funkhouser & Co., of Lafayette, for violation of the internal revenue law.

The libel was filed September 27, 1867, and on the 20th of December following, a judgment of forfeiture of the property in question was pronounced. Under this judgment, the property has since been sold; and

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the proceeds remain in the hands of the marshal.

Several persons have preferred claims, as informers, to a portion of said proceeds. And the question to be decided is whether any of said claims—and, if so, which—shall be allowed.

Among the various claims preferred, there are only two which, according to the evidence, are entitled to the least consideration of the court,—that of George L. Little, and that of Charles Lamb and Rufus Chadwick. The contest is, therefore, between Little of the one part, and Lamb and Chadwick of the other.

The libel recognizes Little as the informer. It commences thus: "Alfred Kilgore, attorney," &c., "who prosecutes for the United States, as well as for George L. Little, the informer herein, exhibits this his libel," &c. And it concludes with a prayer of process against the property, and that all persons in interest be required to appear and show cause "why said forfeiture should not be decreed in manner and form as by law provided, one-half of the proceeds of sale for the use of George L. Little, the informer."

On the 15th of January, 1868, Little filed under oath what he calls "a supplemental claim and answer." In this he asserts that he is the first informer; that on the 9th of September, 1867, he proceeded to Lafayette "in the capacity of a special agent of the treasury department," to investigate the manner in which Funkhouser & Company carried on their business of distilling, and to ascertain whether they had violated the internal revenue laws; that he spent several days in that investigation, and ascertained all the facts on which the judgment of forfeiture was rendered; that, on the 12th of September, 1867, he embodied the result of said investigation in a report to the collector of the proper district, and promptly advised the internal revenue commissioners of said result; that, on the facts developed by said investigation alone, the seizure of the property was made, the libel filed, and the judgment of forfeiture rendered; and that Lamb and Chadwick furnished no information which led to these results.

On the 19th of December, 1867, the day before the judgment of forfeiture, Lamb and Chadwick filed their claim. In it they allege in general terms that they are the first informers and entitled to a moiety of the proceeds; and that Little is not the first informer, and is not entitled to any of the proceeds. And they pray the court to protect their interests and to allow their claim.

On the 20th of March, 1868, Lamb and Chadwick amended their claim by alleging that they discovered the frauds out of which said forfeiture arose before the first of September, 1867, and gave information thereof to the assessor and collector of the proper district before Little made his said investigation and discoveries at Lafayette; and before that in-

vestigation. gave to Little, in his character of a special agent of the treasury department, full and complete information of said frauds; and they aver that "said Little then and there undertook and faithfully promised, in consideration of said information, and the communication thereof by them to him, that he would see that their rights as informers against the said distillery of Funkhouser & Co. should be protected; and they say that, relying on said promise and undertaking * * * they took no steps to protect or secure their own rights as such informers, until they learned that said Little, in direct violation of his aforesaid promise and undertaking, had fraudulently and falsely set up a claim as informer" in the premises; and that, confiding in said promise, they were induced to give their claim no further attention till they discovered Little's said fraud on them, whereupon they immediately filed their claim.

It is understood that the district attorney takes no part in this controversy.

A great mass of testimony, in the form of depositions, has been filed by the contending claimants. This evidence, I think, establishes the following facts:

On the first of September, 1867, Little was, and has ever since continued to be, a special agent of the United States treasury department. In that capacity, he was employed at St. Louis early in that month. While there, he received from the treasury department a letter dated September 4, 1867, instructing him to proceed to Lafayette and investigate whisky frauds suspected to have been perpetrated there. He arrived at Lafayette about the 10th of December, and forthwith commenced said investigation. In a few days he discovered that Funkhouser & Co., who had carried on a distillery at Lafayette, had been guilty of divers frauds on the revenue, and had thereby forfeited said distillery and its appurtenances, with large quantities of whisky, to the government, and had defrauded the revenue to the amount of forty-nine thousand three hundred and thirty dollars. On the 12th of September, 1867, he made out a detailed written statement of said frauds and forfeitures, and delivered the same to Williams. the collector of the district in which the distillery was situate. At the same time. he telegraphed Hon. E. A. Rollins, commissioner of internal revenue, of the same facts. On the information thus given by Little, the property was seized by Williams, the collector, who thereupon forwarded to the district attorney the facts so communicated to him by Little. Little also had communication with the district attorney; and the district attorney, on the information above thus obtained through Little, framed the libel on which the judgment of forfeiture was rendered. Little's discovery of any of the causes of said forfeiture could not have been made earlier than the 10th of September. 1867; and he did not, in any sense. become an informer till the 12th of that month.

About the first of September, 1867, and certainly before the 10th of that month, Lamb and Chadwick, by a joint inquiry, discovered that Funkhouser & Co. were shipping whisky in barrels from their distillery in duplicate serial numbers, in violation of the 38th section of the internal revenue act of July 13, 1866, and immediately gave information thereof to Thomas W. Fry, assessor of the district, and delivered to said Fry a written statement of the serial numbers so duplicated, with the dates of the shipments. In July or August, 1867. Lamb and Chadwick gave like information and written statements to one G. W. Giesey, a special agent of the treasury department residing in Cincinnati, and then at Lafayette investigating these whisky frauds; but he, as it seems, made no use of the information they gave him. They also, before the 10th of September, 1867. wrote to the district attorney concerning these frauds; but they stated nothing with sufficient definiteness to enable him to act on it, and he did not act on it. About the 10th of September, 1867, while Little was making said investigation, and after he had discovered enough to effect said forfeiture, Lamb and Chadwick informed him that they knew of important facts relative thereto. He requested them to give him these facts. At first they refused. But afterwards, and before the 12th of September, 1867, they communicated to him the same facts in writing which they had, as aforesaid, given to Fry and Giesey; and Little embodied them in his said report to Williams; and these facts, as to duplicate serial numbers. were, among other causes, stated in the libel as grounds of the forfeiture aforesaid. Lamb and Chadwick both swear that they gave Little the said information in consideration that he then promised them to protect them in their rights as informers. But Little, under oath, denies this promise. The promise, I think. must be considered as proved.

The parties claim as informers, under the 179th section of the act of July 13, 1866 (14 Stat. 145). That section provides that a portion of the judgment in cases like the present. "shall be to the use of the person, to be ascertained by the court which shall have imposed or decreed any such fine, penalty, or forfeiture. who shall first inform of the cause, matter. or thing, whereby such fine, penalty, or forfeiture shall have been incurred."

To entitle any person to a share of the judgment as informer under this section, I think the following things are necessary:

1. The information must be given by the claimant to some officer of the government on whom the law devolves the power and duty of acting on such information. Thus, I suppose that information to the district attorney. or to the proper assessor or collector, or to a special agent of the treasury department char-

ged with the duty of inquiring into the matter to which the information given relates, is sufficient so far as the person to whom it is given is concerned.

2. The information must be a plain statement of some one substantial "cause, matter, or thing whereby a fine, penalty, or forfeiture shall have been incurred."

It is certainly not sufficient to state a general suspicion or rumor of a fraud on the revenue, although such statement might lead to inquiries disclosing facts sufficient to incur the liability. Nor would a sound, positive statement that. a fine, penalty or forfeiture had been incurred be sufficient without a statement of the "cause, matter, or thing" for which the same was incurred.

It is probable that, as a general rule, the information ought to be written; for officers of the revenue could hardly be expected to act on verbal assertions in such a case. Indeed, it appears to be the practice in some places to require the information not only to be in writing, but to be supported by affidavit. And I would think that the revenue officer would not be bound to pay any attention to information to which the informant, if required, refused to swear. But if he was not required by the officer to swear to it, I think it would not be invalid for not being under oath.

3. If several causes exist, by either of which a fine, penalty, or forfeiture is incurred, information of any one of them properly given to the proper officer, would entitle the informer to his claim, if he is the "first" informer.

. 4. None but the first informer is entitled to any share in the judgment. And the first informer is he only who, in the language of the act, "shall first inform of the cause, matter, or thing whereby such fine, penalty, or forfeiture shall have been incurred."

5. The information thus first given must be true in substance and in fact; and it must be capable of proof. If it be false or if it cannot be proved to be true, it can be of no value to the government. The policy of the government is to reward the person who shall first furnish valuable information of the act of forfeiture. And if the information given be untrue or incapable of proof (which is the same thing in effect), it is of no value, and cannot, therefore, entitle the informer to a reward.

Against the claim of Mr. Little, it is insisted that whatever information he may have given, and how early soever he may have given it, his official position precludes his claim as being a common informer. The 179th section above cited gives the share to the person "who shall first inform," without excluding revenue officials or any other class of men. But it is objected that the claim of Mr. Little is precluded by the 9th section of the act of July 13, 1866 (14 Stat. 101), amending section 5, act of June 13, 1864 [13 Stat. 224], in which it is declared that "any inspector or revenue agent, or any special agent

appointed by the secretary of the treasury, who shall demand or receive any compensation, fee or reward other than such as are provided by law, for or in regard to the performance of his official duties, shall upon conviction be fined," &c. The 14th section of the act, March 3, 1865, provides for the appointment of revenue agents, "who shall be paid, in addition to the expenses necessarily incurred by them, such compensation as the secretary of the treasury may deem just and reasonable, not exceeding two thousand dollars per annum."

In a case very similar to the present, Judge Blatchford, of the Southern district of New York, has allowed a special agent of the treasury to make claim as a common informer; though it does not appear that any objection to his right to claim was made under the acts above cited. One Hundred Barrels of Whiskey [Case No. 10,526]. It is understood also, that in cases of forfeiture and penalties compromised before judgment, the treasury department has been in the habit of allowing assessors, collectors, and special agents of the revenue, as first informers, a share in the proceeds of the penalty or forfeiture.

In view of the acts of March 3, 1865, and July 13, 1866, above referred to, as well as of general principles and policy, I entertain great doubt whether a special agent of the revenue, who, in pursuance of instructions given him, first discovers facts working a forfeiture under the revenue laws, can by reason thereof be allowed to share in the proceeds of the thing forfeited. The act of July 13, 1866, seems to forbid it. Such agent is paid for his services, whether his investigation be successful or not, without this. additional reward. It hardly seems good policy, after paying such special agent fairly for his services, to add the stimulus of a share in the spoils, thus making him a sort of speculator, and laying before him a temptation to carry things beyond just and reasonable bounds. Besides, when the special agent, by any means, discovers a "cause, matter, or thing" whereby a fine, penalty, or forfeiture has been incurred, has not the government at that moment, in legal contemplation, information of the fact? Is not the knowledge or information in the mind of the special agent identical with knowledge or information on the part of the government? If, at that moment. the government can be said to be informed, how can the special agent be said first to inform? . Is he entitled to the share because he informs himself? Will he be so entitled because, after he has made the discovery and the government has by consequence already received the information, he communicates the fact to some other revenue officer or to the district attorney? Can an informer be rewarded in any case where he gives information to the government after it is in possession of that information?

I know that there are cases in which acts of congress have expressly allowed revenue

officers to share as informers. But in regard to frauds of the kind now under consideration, I am not aware of any act expressly making such provision. Nevertheless, as the usage appears to be so, and as this case may well be decided on other grounds, I make no decision on the point whether Mr. Little's claim is precluded merely because he is a special revenue agent.

It is urged by Mr. Little that the claim of Lamb and Chadwick cannot be allowed, because they are too late in preferring it.

We have seen that these gentlemen did not bring their claim to the notice of the court till the day before the final judgment was rendered, and then, not by asking to be made parties to the original proceeding, but by a petition to be allowed to share in the proceeds of the forfeiture.

In support of this objection, we are referred to the case of Francis v. U. S., 5 Wall. [72 U. S.] 338. In that case, the proceeding was under the act of August 6, 1861 (12 Stat. 319). The 3rd section of that act provides that "the attorney-general, or any district attorney of the United States * * * may institute proceedings of condemnation; and in such case they shall be wholly for the benefit of the United States. Or any person may file an information with such attorney, in which case, the proceeding shall be for the use of such informant and the United States in equal parts." In that case it was held that, under this provision, the informer must become a party to the proceeding in its inception, else the proceeding would "be wholly for the benefit of the United States." This was the necessary result of the words of that act. It made no provision concerning a first informer. It contemplates no controversy between different informers. And it provides that unless the information be filed with the attorney for the government, the proceeding shall be wholly for the benefit of the United States. No such provisions are found in the acts under which the present proceedings were had. As we have already seen, these only provide that the first informer—"to be ascertained by the court"—shall be entitled to share in the proceeds. I think, therefore, that the case in 5 Wall. [72 U. S., supra], is inapplicable to the point under consideration.

It is true that, since, in these cases, informers are liable for costs when the prosecution fails, it would be right to require them to become parties to the proceedings at an early stage. But I do not think that they are bound to be named in the libel. If so, there could be no such contention and decision between different informers, as seems to be contemplated by the 179th section of the act of July 13, 1866. For in that case, the person named in the libel must be taken to be the first informer, and no other person could contest the right with him.

Though Lamb and Chadwick came late into the case, I think they are not thereby precluded, especially as they seem to have been prevented from coming earlier by the promise of Little to protect their interests.

The only remaining question is, Who "first informed of the cause, matter, or thing whereby" the forfeiture in question was incurred? That Little, on the 12th of September, 1867, gave to Williams, the collector, the information on which the prosecution proceeded, and on which the judgment was pronounced, there can be no doubt. That he never at any earlier date, informed of the facts to any one, is equally certain. Nor can it be claimed that the mere ascertainment by him of the facts on which the forfeiture was adjudged, amounted to an information within the meaning of the act of congress. We must therefore consider him as having informed on the 12th of September, 1867, and not before.

Now, did Lamb and Chadwick, within the meaning of said act, inform before the 12th of September, 1867? It is certain that whatever information they gave was given before that date; and that prior to that time they informed Giesey, a special revenue agent, Fry, assessor of the district, and Little, another special agent of the revenue, in writing, of facts concerning said forfeiture. Were the facts, thus given in writing to these three revenue officials, such an information as is contemplated by the 179th section of the act of July 13, 1866? If so, they are the first informers. These facts, as we have seen, were a written statement to the effect that Funkhouser & Co. had shipped divers barrels of whisky in duplicate serial numbers in fraud of the revenue. The duplicate serial numbers and the dates of the shipments were stated in the writings; and the writing handed to Little was, under his directions, certified to be true by the party who took the numbers from the barrels.

Such a duplication of numbers is a violation of the 38th section of act of July 13, 1867, which requires that all casks or packages of distilled spirits manufactured in any distillery shall be numbered for the current year, beginning with number one for the first cask or package inspected on or after the first day of January; and that no two or more casks shall be marked with the same number.

This prosecution was founded on the 25th section of the act of March 2, 1867 (14 Stat. 483). It provides: "That the owner, agent, or superintendent of any still, boiler, or other vessel used in the distillation of spirits, who shall neglect or refuse to make true and exact entry and report of the same, or to do or cause to be done anything by law required to be done concerning distilled spirits, shall, in addition to other fines and penalties now by law provided, forfeit for every such neglect or refusal all the spirits made by or for him, and all the vessels used in making the same, and the stills, boilers, and other vessels used in distillation," &c.

Thus, we see that by this provision of law, any neglect to perform any requirement of law concerning distilling, operates as a for-

feiture of the whole concern. The device of the duplicate serial numbers in question was undoubtedly such a neglect; for the parties not only neglected to number serially as the law requires, but falsely numbered the casks.

This false numbering, therefore, if alone averred in the libel and proved on the trial, would of itself have as effectually worked a forfeiture to the full extent to which it was adjudged, as it and the four other causes of forfeiture therein averred actually did.

It is clear, then, that the information given by Lamb and Chadwick was such information as is contemplated by the 179th section of the act of July 13, 1866; and, to my mind, it is equally clear that Lamb and Chadwick are the first informers within the meaning of that section.

A question has been made whether the informers' share shall be taken from the gross or net proceeds. I hold that it must be from the net proceeds. All the expenses of the litigation must be ascertained and deducted from the gross sum on hand. Then the share of Lamb and Chadwick must be proportioned according to the remaining net proceeds, pursuant to the circular of the secretary of the treasury, of August 14, 1866. And the matter is referred to the master to ascertain the share coming to Lamb and Chadwick according to the rules above laid down, and to the provisions of said circular; and he is ordered to report the result to this court.