## UNITED STATES *v.* SIMONS and another.

*(District Court, E. D. Michigan. June 20, 1881.)*

1. INFORMER.

An informer is one who gives the first information to the government of a violation of law, which induces the prosecution, and contributes to the conviction of the offender, or the recovery of a fine, penalty, or forfeiture.

2. SAME.

The fact that a person has procured testimony, be it never so valuable, does not entitle such person to an informer's share, where the fraud has been disclosed by others, and proceedings have been commenced in consequence of such information.

3. SAME—CONSPIRACY.

Where an informer procures the arrest and conviction of certain members of a conspiracy, who, upon their examination, confess and implicate other conspirators engaged in the same fraudulent trans-

action, and these in turn are also arrested, convicted, and fined solely upon such information, *held*, the original informer is entitled to share in such fine.

**4. SAME—SAME.**

Hence, where A. informed against B., C., and D. for smuggling, and these or one of them confessed and implicated E. for receiving the property smuggled, and E. was arrested, and, acting upon the advice of a third party, also confessed and implicated F. and G. as his principals in the transaction, who were convicted and fined, *held*, that A. was entitled to the informer's share of the fine imposed.

**5. SAME—OFFICER OF THE UNITED STATES.**

It *seems* that any person receiving pay from the government, whose duty it is to disclose any information he may receive, is "an officer of the United States" within the meaning of the act of 1874, and therefore cannot be an informer.

Upon petition of John Brakeman and John B. Stadler for the informer's share of a fine of $2,000 imposed upon Simons and Burnstine. So far as Brakeman is concerned, the facts were that during the fall of 1880 he was employed by General Spaulding, special agent of the treasury department, to ferret out certain supposed rag-smuggling operations along St. Clair river. In the progress of his researches he discovered, from an examination of the books of the railway at St. Clair, and from statements made by the agents of the road, that Morris Brown, Samuel Lewis, and one Fink were smuggling rags at St. Clair and shipping them to one Applebaum, at Detroit. This information being communicated to the collector at Port Huron, Lewis, Brown, and Fink were arrested. Upon their examination, they, or one of them, disclosed the fact that they had been hired by Applebaum to buy the rags and smuggle them over for his benefit. Upon these statements Applebaum was arrested for aiding and assisting in the illegal importation, and gave bail for his appearance. Before the day set for the hearing of his case before the commissioner, Applebaum went before the district attorney and made a full confession of his connection with the smuggling transactions, and disclosed the fact that Simons and Burnstine, the defendants, were his principals; that they had employed him to get the rags smuggled across the river, and

had received them in Detroit,—the rags first going to Applebaum's barn, where they were repacked and then taken to Simons & Co's. warehouse. This statement was reduced to writing by Applebaum a day or two afterwards. He also stated that he made these disclosures relative to Simons & Co. for the sole reason that they had failed to keep their promise to him to protect him if caught, and to employ counsel for his defense, and that he was not going to suffer alone. A complaint was then made against Simons and Burnstine for aiding and assisting in smuggling the rags above mentioned, to which they signed a *nolo contendere* and paid a fine of $2,000. The petition and affidavits on behalf of Stadler show that one Jacobs came to him and told him that his son-in-law, Applebaum, was in trouble; that he had been arrested for smuggling, etc. After some conversation with the deputy marshal, Stadler advised Jacobs to induce Applebaum to make a full confession of his connection with the transaction, and that he might in that way save himself from prosecution. In pursuance of this suggestion, Applebaum confessed, and implicated defendants.

BROWN, D. J. Section 4 of the act of June 22, 1874, (18 St. at Large, 186,) provides :

"That whenever any person not an officer of the United States shall furnish to a district attorney, or to any chief officer of the customs, original information concerning any fraud upon the customs revenue, perpetrated or contemplated, which shall lead to the recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, whether by importers or their agents, or by any officer or person employed in the customs service, such compensation may, upon such recovery, be paid to such person so furnishing information, as shall be just and reasonable," etc.

Section 6 : "That no payment shall be made to any person furnishing information in any case wherein judicial proceedings shall have been instituted, unless his claim to compensation shall have been established to the satisfaction of the court, or judge having cognizance of such proceedings, and the value of his services, duly certified by the said court or judge for the information of the secretary of the treasury."

It is well settled that in a contest between informers he is the informer who, with the intention of having his information acted upon, first gives information of a violation of

law, which induces the prosecution, and contributes to the recovery of the fine, penalty, or forfeiture which is eventually recovered. *U. S.* v. *George,* 6 Blatchf. 406; *Sawyer* v. *Steele,* 3 Wash. 464; *City Bank* v. *Bangs,* 2 Edw. Ch. 95; *Lancaster* v. *Walch,* 4 M. & W. 16; *U. S.* v. *Isla de Cuba,* 2 Cliff. 458; *100 Barrels of Whiskey,* 2 Ben. 14; *50,000 Cigars,* 1 Low. 22.

The fact that a person has procured valuable testimony, making a strong case against the offenders, but for which it is indeed doubtful whether any conviction could have been had, or any money recovered from them, does not entitle the person procuring such testimony to any portion of the fine, where the fraud has been discovered and disclosed by others, and proceedings have been commenced in pursuance of that information. The statute gives the informer's share to the one who furnishes the *original* information which shall lead to the recovery of the fine, but, whether justly or unjustly, awards nothing to those who furnish evidence to confirm the truth of the statements of the original informers, and this, although the applicant may have spent much time and expended money in ferreting out the details of the fraud, since their action cannot be said to have induced the prosecutions. *U. S.* v. *George,* 6 Blatchf. 406, 418.

Applying these principles to the case under consideration, it seems quite clear that Stadler cannot be considered the informer; in fact, he gave no information at all. All that he did was to advise Jacobs, the father-in-law of Applebaum, to induce Applebaum to make a full confession of his connection with the smuggling transactions, and thereby implicate the defendants. This is in no sense of the word the furnishing of original information. As between Stadler, Jacobs, and Applebaum, the last stands in much the best position of the three to be considered the informer.

It seems to me, however, that Brakeman may fairly be said to have furnished the original information which led to the recovery of the fine. It is true that he made no disclosures himself which implicated Simons and Burnstine;

but he did unearth the fraud with which they were connected, by furnishing information against Lewis, Brown, and Fink, who confessed their guilt and implicated Applebaum, who in his turn confessed and caused the arrest of Simons and Burnstine. These parties were all conspirators in the same fraudulent transactions, and it seems to me that the party who furnished the original information upon which a part of the conspirators were arrested, should be considered the informer as to all the conspirators in the same fraud, it appearing that the other conspirators were arrested, not upon information given by any third party, but upon the confessions of the parties who had already been arrested. Applebaum earned immunity from punishment by his voluntary confession, and by the district attorney consenting to make use of his testimony against his co-conspirators, but equitably he is entitled to nothing more. *Whisky Cases,* 99 U. S. 594. Upon the other hand, Brakeman ought not to lose his share of the fine which would have been imposed upon the parties he informed against directly, by their confessing and inculpating others, and thus securing immunity. The interest of the informer ought to be identical with that of the government. The interests of the government require the leading members of the conspiracy to be punished. The original informer ought not to lose by this being done. I think this view is borne out by the case of *Wescott* v. *Bradford,* 4 Wash. 492, in which the court discusses the question how far information given to the collector as to one thing may or may not be considered as extending to others, so as to warrant the conclusion that the forfeiture was recovered in pursuance of such information. The distinction that is taken there is between cases where several parties are implicated in a single fraud, and those wherein the discovery of one fraud results in the ferreting out of another fraud of the same description, but not connected with it.

It only remains to consider whether Brakeman is such an officer of the United States as is excepted from the operation of the act of 1874, and is disentitled by reason of his official

position to claim a share of the fine. I had supposed 'that in order to preclude a person from receiving the informer's share he must have been a permanent officer of the government, holding his authority by virtue of a commission or appointment by a chief officer of the customs. Such, I am informed, has been the ruling of the treasury department in this particular, but the courts seem to have uniformly taken a different view, and I am not disposed to dissent from their conclusions. Even before this act was passed, and when officers might be considered as informers, it was held by Judge Lowell, in the *U. S.* v. *100 Barrels of Distilled Spirits*, 1 Low. 244, that they could only be considered informers where they incidentally and not in the direct prosecution or course of their duty, or of any special retainer for that purpose, made a discovery.

"As if an inspector, put on board a vessel merely to keep the cargo safely, discovers smuggled goods concealed, or where an officer sent to inquire into a particular charge discovers something entirely different and before unsuspected, or where he is told by some one as a friend and not as an officer, or the facts which his informant, not wishing to be known, refuses to bring forward himself, but tells him for the very purpose of enabling him to give the information in his own name. In these cases an officer may be an informer."

"St'll," he observes, "it is clear that an officer cannot always be considered an informer merely because he, as an officer, acquires information useful to the government. If this knowledge is acquired in the ordinary discharge of his duty, touching the very subject-matter, or under a special retainer to investigate that matter, I cannot hold him entitled to a gratuity." See, also, *U. S.* v. *34 Barrels of Whisky*, 9 Int. Rev. Rec. 169; *U. S.* v. *Funkhouser*, 4 Biss. 176, 183.

The question was directly passed upon in the case of four cutting machines, 3 Ben. 220, in which Judge Blatchford held that a person whose duty it is to disclose information, and who violates such duty if he does not disclose it, cannot be an informer, and that the person who imparted the information so as to be an informer, must be one who has imposed upon him no official duty to impart the information.

Now it would appear that if Brakeman was under pay of the government and received a salary or wages of any kind for his services in endeavoring to ferret out these frauds, any

information that he received it would be his duty to disclose to the collector or other officer of the treasury department, and that in the light of these authorities he could not be considered an informer; but that, on the other hand, if he were simply employed by the special agent of the department to unearth these smuggling transactions, with the understanding that he should depend for his compensation solely upon his right to the informer's share, that he ought to receive it. As the affidavits are silent upon this point I shall transmit this opinion to the secretary of the treasury, certifying the value of Brakeman's services to be $500, and that he is entitled to receive the same as the informer, in case he is not an officer of the United States within the meaning of the law.